## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Christopher Sharp and Lindsay Sharp, <br><br> Plaintiff, <br><br> v. <br><br> Community High School District 155, Sean Scotty, Kristen Davis, Aimee Memeti, Josh Nobilio, Lake in the Hills Police Department, Louis Zenati, and Village of Lake in the Hills, Illinois, <br><br> Defendants. | Case No. 3:21-cv-50324 <br><br> Honorable Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Christopher and Lindsay Sharp bring this action alleging violations of various constitutional rights. Their case arises from an alleged incident in which their minor child was seen on camera during a virtual high school class handling what the teacher believed to be a firearm. Plaintiffs believe their personal constitutional rights were violated by the ensuing events. They sue Community High School District 155 ("the District"), as well as Sean Scotty, Kristen Davis, Aimee Memeti, and Josh Nobilio (hereinafter collectively referred to the "School Defendants"). They also sue the Village of Lake in the Hills, Illinois, the Lake in the Hills Police Department, and Officer Louis Zenati (hereinafter collectively referred to as the "Village Defendants"). Both the School Defendants and the Village Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim. For the reasons

1

explained below, the motions to dismiss for lack of jurisdiction are denied, but the
motions to dismiss for failure to state a claim [16, 19] are granted.

## I.      Background

The onset of the coronavirus pandemic changed many aspects of daily life.
One change was the move from in-person classroom instruction to virtual
classrooms in which students used video and audio teleconferencing solutions to join
their classes from home. In this case, Plaintiffs are the parents of a high school
student who attended virtual classes.[1] Plaintiffs refer to their child as RCS. In their
complaint, Plaintiffs express a view that this type of learning experience amounts to
surveillance of their home. They further allege that their child attended remote
learning instruction without Plaintiffs giving prior consent to the use of audio and
video teleconferencing.

During one of these classes, Aimee Memeti, a teacher at the District,
observed RCS handling what she believed was a firearm. She reported the
observation to Sean Scotty, the Dean of the school at the time. Scotty then contacted
RCS' guidance counselor, who had already been talking to Plaintiffs regarding an
unrelated matter concerning RCS. This is allegedly how Plaintiff Lindsay Sharp
learned of the incident. She then informed Plaintiff Christopher Sharp, her
husband, who determined that RCS was not in any danger because RCS did not
have access to a firearm and was in the home at the time. Nevertheless, he called
Scotty (the Dean) to discuss the incident. He explained to Scotty that the item was

---

[1] The allegations recited here are taken from Plaintiffs amended complaint. Dkt. 6.

not a firearm, nor did one exist in the home. Despite the assurances, Scotty threatened to contact law enforcement regarding the matter because Scotty allegedly believed the incident was analogous to RCS bringing a gun to school. Scotty then contacted the Lake in the Hills Police Department, which sent four patrol units to Plaintiffs' home.

Defendant Louis Zenati was one of the police officers that responded to the scene. He met Plaintiffs in the front of their home to discuss the matter. Plaintiffs assured him that RCS did not have a real gun but refused to tell him whether any firearms were present in the home. Instead, they referred him to their attorney. Officer Zenati then returned to his patrol car to call Scotty to get more information. He asked if Memeti had been disturbed or alarmed by the incident. Scotty explained that he believed she indeed was disturbed by what she allegedly witnessed. Zenati and the other officers then left Plaintiffs' home. Zenati then spoke directly to Memeti about the incident. She confirmed to him that she was frazzled because she had observed RCS flipping an object in one hand that, upon closer inspection, she believed was a firearm. Memeti clarified, however, that she did not believe any other students had seen the incident because they had not reacted to it, nor had she received any complaints from other parents.

The District then informed Plaintiffs that RCS would not be allowed to participate in any remote learning classes until Plaintiffs could meet with the District's administration to discuss the incident. Although the District allegedly portrayed the meeting as non-disciplinary, Kristen Davis (an administrator at the

District) informed Plaintiffs that RCS was suspended because of the incident. Plaintiffs appealed the suspension, which resulted in the suspension being revoked and the incident being expunged from RCS' student record.

Plaintiffs originally filed this suit on August 18, 2021. Dkt. 1. That same day, the Court entered an order dismissing the complaint without prejudice to refile because Plaintiffs had attempted to bring suit, without an attorney, on behalf of their minor child. Dkt. 5. In response, Plaintiffs filed an amended complaint in which they seek redress for alleged harms done to their own rights, not those of their minor child. Dkt. 6.

In their amended complaint, Plaintiffs bring a plethora of claims. They invoke the Fourth Amendment; the Due Process, Privileges and Immunities, and Equal Protection Clauses of the Fourteenth Amendment; a general right to privacy; and their parental rights to raise children in the way they choose. Plaintiffs also invoke state law, though they do not say what state law.

## II.   Analysis

Motions to dismiss under Federal Rule of Civil Procedure 12(b) challenge the sufficiency of the plaintiff's complaint. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). So, the Court accepts the allegations in the plaintiff's complaint as true and asks only whether those allegations are sufficient to state a plausible claim. *Id.* The defendant, as the moving party, bears the burden of establishing the insufficiency of the plaintiff's allegations. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806

(7th Cir. 2020). Furthermore, federal courts construe *pro se* complaints liberally. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

Because subject-matter jurisdiction is a threshold question that determines whether the Court has the statutory and constitutional authority to adjudicate the action before it, the Court addresses the motions to dismiss for lack of jurisdiction first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869))); *Crawford v. United States*, 776 F.2d 924, 929 (7th Cir. 1986);

### A. Motions to dismiss for lack of jurisdiction

First, all Defendants move the Court to dismiss on the argument that Plaintiffs lack standing to bring this action. Dkt. 16, at 1; Dkt. 19, at 5. Defendants contend that Plaintiffs have merely reframed the original complaint to seek redress on their own behalf although what they really seek is to recover for RCS' injuries. Indeed, the Court already held that Plaintiffs cannot represent their minor child *pro se*. Dkt. 5.

To be sure, some aspects of Plaintiffs complaint imply that they seek recovery for injuries to RCS and not to themselves. For example, the complaint alleges that RCS suffered emotional injuries because of the situation. But contrary to Defendants' arguments, the clear purpose of the complaint is to seek recovery for

injuries done to Plaintiffs themselves. Whether they have alleged enough facts to state any claims for alleged injuries done to their personal rights is a separate, non-jurisdictional question. Thus, the motions to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) are denied.

### B. Motions to dismiss for failure to state a claim

Next, all Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

#### 1. Lake in the Hills Police Department

First, the Lake in the Hills Police Department contends that it should be dismissed from this case because it is not a suable entity. Plaintiffs do not response to this argument. Indeed, the police department is not a suable entity because it is merely a subdivision of the Village itself rather than an independent governmental body. *Rogers v. City of Hobart*, 996 F.3d 812, 819 n.13 (7th Cir. 2021). Thus, the Court dismisses the Lake in the Hills Police Department from this action. The dismissal is without prejudice but without leave to amend because the error cannot be corrected by an amended complaint. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto Ins. Co.*, 935 F.3d 573, 582 (7th Cir. 2019).

#### 2. Fourth Amendment

Plaintiffs also allege a violation of their Fourth Amendment rights. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." U.S. Const. amend IV. Plaintiffs do not explain whether they allege an unreasonable search or

instead an unreasonable seizure. Though Plaintiffs' response mentions the word seizure, the only argument Plaintiffs make in response concerns whether a search occurred when the District employed video teleconferencing as a means of remote learning. Indeed, the focus of Plaintiffs' argument is their contention that they never consented to the use of video and audio technology in their home.

First, Plaintiffs have not sufficiently alleged that the Lake in the Hills police officers seized them within the meaning of the Fourth Amendment. In *Torres v. Madrid*, the Supreme Court analyzed the meaning of a seizure and determined that a person is seized by the "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." 141 S. Ct. 989, 995–96 (2021). But nothing in Plaintiffs' complaint addresses any seizure, let alone an unreasonable one. Indeed, the complaint strongly implies the absence of a seizure. Plaintiffs allege that Officer Zenati and the other officers met them on the stoop to discuss the allegation against RCS. Dkt. 6, at 3. Zenati and the other officers then left the home. *Id.* at 4. Nothing in these allegations plausibly alleges that Plaintiffs were seized. There's nothing to imply that Plaintiffs were required to speak with the officers or prohibited from leaving. Indeed, the alleged purpose of the officers' visit was to investigate the behavior of Plaintiffs' minor child, not Plaintiffs. Thus, at this stage, they have not plausibly alleged an unlawful seizure in violation of the Fourth Amendment.

Plaintiffs have likewise not plausibly alleged an unreasonable search within the meaning of the Fourth Amendment. To begin, Plaintiffs' allegations make clear

that the officers never entered their home, and nothing in the allegations imply that the officers ever performed any search.[2] Thus, the only possible alleged search is when the District used audio and video teleconferencing for remote learning, as was commonplace during the coronavirus pandemic. Indeed, that claim is what Plaintiffs' response brief addressed. Dkt. 29, at 3.

Under the Fourth Amendment, a search occurs when government officials "look over or through for the purpose of finding something; to explore; to examine by inspection." *Doe v. Heck*, 327 F.3d 492, 509–10 (7th Cir. 2001). When that exploration is done through a physical intrusion upon the home, papers, or effects of a person, a search has undoubtedly occurred. *Florida v. Jardines*, 569 U.S. 1, 5 (2013). Nevertheless, physical property rights "are not the sole measure of Fourth Amendment violations." *Id.* (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 64 (1992)). A mere search is not enough to violate the Fourth Amendment, though. That search must be unreasonable. In the school environment, any search is reasonable—and therefore not a violation of the Fourth Amendment—if the legitimate government

---

[2] The Village Defendants' motion to dismiss argued that they did not perform any search within the meaning of the Fourth Amendment. In a stroke of generosity, they assumed that Plaintiffs might be claiming a Fourth Amendment search based on Plaintiffs having voluntarily produced a box of nerf toys they believed may have been what RCS was handling on screen. Dkt. 17, at 7–8. The Court does not read Plaintiffs' complaint as bringing any Fourth Amendment claim based on this allegation. Nor did Plaintiffs' brief respond to this point. Dkt. 29, at 3. Nevertheless, the Court notes that the Village Defendants are correct in their argument that consensually handing over an item to law enforcement renders any search of that item reasonable, absent an exception (e.g., coercion). *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015); *Bogan v. City of Chicago*, 644 F.3d 563, 568–69 (7th Cir. 2011).

interest involved outweighs intrusion upon the plaintiff's privacy interests. *Maryland v. King*, 569 U.S. 435, 448 (2013).

In this case, Plaintiffs allege that the School Defendants violated their Fourth Amendment right when they employed remote learning technology that allowed the teacher to see and hear their minor child, RCS. They contend that the use of this remote learning solution constitutes a search and that the search was unreasonable. In Fourth Amendment search analysis, "the home is first among equals." *Jardines*, 569 U.S. at 6 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Nevertheless, the standard applied to school officials cannot be the same as the standard applied to law enforcement. In *New Jersey v. T.L.O.*, the Supreme Court recognized the important balance that must be struck "between the schoolchild's legitimate expectation of privacy and the school's equally legitimate need to maintain an environment in which learning can take place." 469 U.S. 325, 340 (1985). For this reason, the Court held that school officials do not need to obtain a warrant based on probable cause before conducting a search of a school child reasonably suspected of illicit activity—as would be required of law enforcement officers. *Id.* Indeed, the Court noted the infeasibility of requiring teachers to obtain a warrant every time a child is suspected of an infraction. *Id.* The same underlying rationale applies in this case; the Fourth Amendment cannot be as rigid in the school setting as it is in a government investigation.

Plaintiffs have not alleged a search within the meaning of the Fourth Amendment. As the School Defendants contend, the use of remote learning

technology was not done for the purpose of exploring Plaintiffs' home. *Heck*, 327
F.3d at 509–10. Nothing in Plaintiffs' complaint suggests that RCS' teacher,
Defendant Memeti, looked at RCS on her screen for the purpose of gathering
information or exploring the home. Beyond that, two additional points qualify as
common sense, which judges are expected to consider on a motion to dismiss.
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint
states a plausible claim for relief will . . . be a context-specific task that requires the
reviewing court to draw on its judicial experience and common sense."). First,
teachers and professors need to maintain order in the classroom, and they need to
ensure that students are present and paying attention. During the pandemic,
students from across the country were removed from physical classrooms and
placed in virtual environments. The only possible way teachers could continue to
maintain control of the classroom and to ensure the attendance of their students
was to have them turn their cameras on. Otherwise, students could just walk away,
and the teacher would never know. Second, Plaintiffs have not alleged that the
School Defendants dictated where the camera had to point, and common sense leads
this Court to conclude (in absence of an allegation to the contrary) that Plaintiffs
and RCS could have positioned RCS' desk in such a way that the camera pointed at
a blank wall in RCS' bedroom, with only RCS in view of the camera. In other words,
Plaintiffs and RCS controlled what the government official saw on screen. Under
these circumstances, Plaintiffs' complaint does not allege a search within the
meaning of the Fourth Amendment.

Even if Plaintiffs had alleged a search within the meaning of the Fourth Amendment, they have not plausibly alleged that the search was unreasonable. Again, the reasonableness of the search must be weighed against the important governmental interests involved in the educational environment. *Maryland*, 569 U.S. at 448. As the *T.L.O.* Court put it, schools have a legitimate interest in maintaining "an environment where learning can take place." 469 U.S. at 340. In this case, the School Defendants were tasked with maintaining a positive and functioning educational experience in the middle of pandemic that resulted in unprecedented government restrictions on movement. The only way, given those restrictions, that they could maintain a place of learning at all was to employ remote-learning technologies. Given the circumstances, even if the use of video constituted a search, that search, as alleged, was reasonable.

Therefore, both because Plaintiffs have not alleged a search, and because the conduct they allege was reasonable, they have not alleged a plausible claim under the Fourth Amendment.

### 3. Fourteenth Amendment Due Process

Plaintiffs also conclude that Defendants violated their rights under the Due Process Clause. In the opening section of their complaint, Plaintiffs allege, in conclusory fashion, that Defendants violated "their rights to liberty, and property, without due process of law"; that Defendants "violated Plaintiffs' right to privacy"; that Defendants violated Plaintiffs' "parental rights to raise their children in the manner they choose"; and, similarly, that Defendants violated Plaintiffs' rights "to

11

make parental decisions concerning the care, custody, and control of their children." Dkt. 29, ¶¶ 4–5, 7–9. Thus, Plaintiffs appear to assert both procedural and substantive due process claims. To state a procedural due process claim, a plaintiff must allege (1) the deprivation of a protected property or liberty interest and (2) that the deprivation was undertaken without sufficient process under the circumstances. *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018); *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). To allege a substantive due process claim, a plaintiff must allege that the defendants violated a fundamental right or liberty under color of state law and that their actions were "so arbitrary and irrational as to shock the conscience." *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021) (internal quotation marks omitted).

The problem here is a familiar one. The Defendants, and the Court, are left to speculate what allegations form the basis of Plaintiffs' due process claims. All Defendants move the Court to dismiss these claims. But, here again, Plaintiffs did not address these arguments in their response brief. Reading Plaintiffs' *pro se* complaint liberally, none of Plaintiffs' allegations explain the basis for a procedural or substantive due process claim. They mention privacy rights, including the right to family integrity and decision making, but merely observing that federal law prohibits a course of action does not constitute a plausibly stated claim. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Thus, the Court dismisses Plaintiffs' due process claim without prejudice. If Plaintiffs opt to amend their

complaint, which they may do, they must allege sufficient facts (as opposed to legal conclusions) that both put Defendants on notice of the claims and render them plausible. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

### 4. Equal Protection

Plaintiffs' Equal Protection claim suffers the same defect. Plaintiffs' complaint only cursorily alleges a violation of their rights to equal protection of the law. Dkt. 6, ¶ 6. Outside of their recognition that government officials may not deny equal protection of the law, Plaintiffs' complaint includes no further allegations. The Court and the various Defendants are left to speculate about what the basis for their claim could be. And merely observing that the law prohibits an act is not enough to plausibly state a claim.[3] *Kaminski, Inc.*, 23 F.4th at 776. Thus, the Court dismisses Plaintiffs' Equal Protection claim without prejudice.

### 5. *Monell*

The Court does not read Plaintiffs' complaint as alleging a claim for municipal liability against the Village of Lake in the Hills. Nevertheless, Plaintiffs named the Village itself, even though the Village cannot be held liable for the conduct of its employees on a theory of *respondeat superior*. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014). Instead, Plaintiffs' claim against the

---

[3] Plaintiffs make the same error with respect to any claim under the Privileges and Immunities clause. They merely observe the existence of that clause in the Constitution without including any further detail explaining what privilege or immunity they were denied. Dkt. 6, ¶ 3; *see also Chavez v. Ill. State Police*, 251 F.3d 612, 649 (7th Cir. 2001) (discussing the privileges and immunities clause as a protection against a state's decision to discriminate against citizens of other states without substantial reason other than their status as citizens of another state). Thus, if Plaintiffs intended to bring a claim under the Privileges and Immunities clause, it is dismissed without prejudice for the same reason.

Village hinges on their ability to allege a policy, practice, or widespread custom that was the moving force behind their constitutional injury, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), though they have not alleged any policy, practice, or widespread custom. And the Court has already held that Plaintiffs have failed to state a claim for any constitutional injury. Thus, they necessarily have also failed to state a *Monell* claim against the Village, which requires that predicate constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, the Court dismisses any *Monell* claim contained in Plaintiffs' allegations without prejudice.

### 6. State Law Claims

Lastly, the Court notes that Plaintiffs' complaint mentions state law, though it does not actually elaborate on what state laws the complaint is intended to invoke. Under the federal rules, Plaintiffs need not plead legal theories. *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). Nevertheless, the Court has dismissed all federal claims for failure to state a claim. Thus, if Plaintiffs are unable to amend their complaint to state plausible federal claims, the Court will decline to exercise supplemental jurisdiction over any state law claims that may arise from the alleged facts. *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019) ("The district court was well within its discretion in declining to exercise supplemental jurisdiction after it dismissed all claims over which it had original jurisdiction.").

14

### III.    Conclusion

For the reasons explained in detail above, the Court denies the motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) but grants the motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). If Plaintiffs believe they can amend their complaint to state a claim, consistent with this opinion and their obligations under Rule 11(b), then they may amend by August 5, 2022. If Plaintiffs decline the opportunity to amend by that date, this dismissal will be with prejudice.

Date:  July 7, 2022

_____
Honorable Iain D. Johnston
United States District Judge

15