**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER SHARP and LINDSAY SHARP, | |
| Plaintiffs, | Case No. 3:21-cv-50324 |
| v. | Honorable Iain D. Johnston |
| COMMUNITY HIGH SCHOOL DISTRICT 155, SEAN SCOTTY, KRISTEN DAVIS, AIMEE MEMETI, JOSH NOBILIO, and LOUIS ZENATY, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Christopher and Lindsay Sharp bring this action alleging violations of various constitutional rights. The case arises from an incident where the high school teacher of the Plaintiffs' minor child allegedly saw the child handling what the teacher believed to be a firearm during an online class. The Plaintiffs represent themselves pro se and are now on their third complaint against the Defendants, claiming that their constitutional rights were violated because of the events described herein. In the original complaint Plaintiffs sued Community High School District 155 ("the District"), Sean Scotty, Kristen Davis, Aimee Memeti, and Josh Nobilio (collectively "the School Defendants"). They also sued the Village of Lake in the Hills, Illinois, the Lake in the Hills Police Department, and Officer Louis Zenaty[1] (collectively the "Village Defendants"). The Defendants previously moved

---

[1] The Plaintiffs mistakenly spelled Officer Louis Zenaty as "Louis Zenati", the Court will use the correct spelling of the Officer's last name in this order.

to dismiss the Plaintiffs' amended complaint [16,19]. The Court granted the motions to dismiss without prejudice [41], terminated the Village of Lake in the Hills and the Lake in the Hills Police Department from this action, and gave Plaintiffs the opportunity to file a second amended complaint against the School Defendants and Officer Zenaty. Before the Court are the School Defendants and Officers Zenaty's Rule 12(b)(6) motions to dismiss Plaintiffs' second amended complaint [49,53]. For the reasons below, the motions are granted and the claims against those defendants are dismissed with prejudice.

## I. Background

The Court gave the pro se Plaintiffs this additional opportunity to amend their complaint because it failed to state claims upon which relief could be granted [41]. Plaintiffs' second amended complaint merely parrots all the claims previously made against the Defendants, with only slight alterations [47]. The Plaintiffs eschewed their opportunity to develop their allegations in a second amended complaint by failing to address the portions of the previous complaints that the Court found legally deficient.

The factual claims are well documented in this Court's previous motion to dismiss order, but because the backdrop of Plaintiffs' allegations stem from a very serious incident, some facts and procedural history warrant reiteration. During the height of the COVID-19 pandemic, many school districts across the country turned to online teaching modalities to ensure the continued education of children.[2] During

---

[2] Seventy-seven percent of public schools moved classes to online distance-learning formats. U.S. Department of Education, National Center for Education Statistics, *Impact of the Coronavirus*

an online class that was recorded, Aimee Memeti, the high school teacher of the Plaintiffs' minor child (RCS), observed what she believed to be RCS handling a firearm. Memeti did what was by school policy if she believed a student possessed a weapon, she reported it to the dean of the school, Sean Scotty. However, Plaintiffs transform this routine procedure into a fantastical claim that there was conspiracy by the School Defendants to search and surveil RCS, and the School Defendants were acting as "surveillance agents for the government." SAC at 9.

After receiving this information, Dean Scotty contacted the Lake in the Hills Police Department, which sent four patrol units to Plaintiffs' home. Officer Zenaty was one of the patrol units and spoke to Mrs. Sharp on the stoop of their home about the incident with RCS. Mrs. Sharp stated that RCS did not have a firearm and produced a box containing a NERF toy gun. Officer Zenaty also asked if the Plaintiffs had a gun in their home, to which Mrs. Sharp invoked her right to counsel. Officer Zenaty and the other officers left Plaintiffs' home and Officer Zenaty opened a criminal investigation into the incident. RCS later was charged in juvenile court and admitted to disorderly conduct.

In the second amended complaint, Plaintiffs bring a host of claims attempting to seek redress for alleged harms done to their own constitutional rights. They invoke the Fourth Amendment protection against unreasonable search and seizure; the Fourteenth Amendment for violations of Due Process, Privileges and Immunities, and Equal Protection; and a claim for general rights to privacy and to raise their

*(COVID-19) Pandemic on Public and Private Elementary and Secondary Education in the United States (Preliminary Data): Results from the 2020-21 National Teacher and Principal Survey* 3 (2022)

children the way they choose. Plaintiffs also invoke state law, in what appears to be a new claim for unauthorized video recording and live video transmission under the Illinois Criminal Code, 720 ILCS 5/26-4(a-6), (a-20).

## II. Legal Standard

Under Rule 8, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a complaint to be plausible, the plaintiff's factual allegations—as opposed to any legal conclusions—must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the plaintiff's well-pleaded factual allegations and views them—and all reasonable inferences—in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr. Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 587 (7th Cir. 2009). A plaintiff must show through his allegations that it is plausible rather than merely speculative that he entitled to relief. *Snyder v. Smith*, 7 F. Supp. 3d 842 (N.D. Ind. 2014).

On a motion to dismiss, the moving party bears the burden of establishing the insufficiency of the complaint's allegations, and thus that the complaint should be dismissed for failure to state a claim. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th

4

Cir. 2021). Furthermore, federal courts construe *pro se* complaints liberally. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

## III. Analysis

### a. Fourth Amendment Claim against the School Defendants

Plaintiffs allege that the School Defendants illegally searched their home by viewing inside of it through the Zoom video conferencing application that RCS used for a remote learning high school class. Mrs. Sharp also claims that Officer Zenaty violated her constitutional rights by conducting an illegal search and seizure when speaking to her outside of her home during a welfare check. The Court previously dismissed Plaintiffs' Fourth Amendment claims because Plaintiffs failed to allege a search within the meaning of the Amendment and failed to allege that Officer Zenaty seized Mrs. Sharp or her possessions.

The School Defendants maintain that the Court's previous ruling should stand because the Plaintiffs second amended complaint still fails to allege a search within the meaning of the Fourth Amendment. The School Defendants also argue that they are entitled to qualified immunity on Plaintiffs' claim because they did not violate a clearly established constitutional right.

Qualified immunity shields government officials "from individual liability for civil damages under 42 U.S.C. §1983 . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bradley v. Vill. of Univ. Park*, No. 22-1903, 2023 U.S. App. LEXIS 2732, at *29 (7th Cir. Feb. 3, 2023); *Figgs v. Dawson*, 829 F.3d 895, 905 (7th

Cir. 2016). When presented with a qualified immunity argument, the court "must address two questions: whether the plaintiff's allegations make out a deprivation of a constitutional right, and whether that right was clearly established at the time of defendant's alleged misconduct." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). "If either inquiry is answered in the negative, the defendant official," is protected by qualified immunity. *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018). Courts may analyze the clearly established prong without first considering whether the alleged constitutional right was violated. *Id.* at 547 (citing *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017)). It is the plaintiff's burden to prove that a right was clearly established at the time of the alleged violation. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346 at 353 (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).; *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019) (qualified immunity is an affirmative defense, but once raised, the plaintiff has the burden to overcome the defense).

To be clearly established, the "rule must be 'settled law,' which means it is dictated by 'controlling authority' or a 'robust consensus of cases of persuasive authority.'" *Bradley*, 2023 U.S. App. LEXIS 2732, at * 30 (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018)). A plaintiff must point to a "closely analogous case" finding the alleged violations unlawful. *Reed*, 906 F.3d at 547 (citing *Findlay v. Lendermon¸*722 F.3d 895, 899 (7th Cir. 2013)). The case need not be identical, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).

6

The Court's Motion to Dismiss Order [41] makes clear why Plaintiffs' previous complaints failed to state a claim against the School Defendants, and because Plaintiffs have failed to correct any of the deficiencies specified in the Order, it is unnecessary to repeat the same analysis here. Alternatively, the School Defendants assert qualified immunity because "no reasonable public official would have known that viewing a student's actions during a live video stream—during class time—is tantamount to a constitutional violation. Nor would any reasonable public official consider that reporting a child holding a firearm violates that child's (or, applicable to this case, his parents') constitutional rights." School D's M. to Dis., Dkt. 49 at 14. Plaintiffs fail to point to any closely analogous case and continue to assert a claim that is not plausible under the Fourth Amendment. Without plausible allegations of an underlying constitutional violation, Plaintiffs would be unable to establish that the School Defendants violated a clearly established right, thus the School Defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment Claim. *Reed*, 906 F.3d at 546 (if a plaintiff fails to show that the official violated a constitutional right, the defendant official is protected by qualified immunity).

### b. Fourth Amendment claim against Officer Zenaty

In the second amended complaint, Mrs. Sharp alleges that Officer Zanaty violated her constitutional rights by conducting an unreasonable search and seizure. But in Mrs. Sharp's response brief, she abandons her claim that Officer Zenaty conducted an illegal search by not acknowledging his arguments in support

of dismissal, so the illegal search claim is forfeited. *Citizens for Appropriate Rural Rds. v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (holding that a plaintiff's failure to respond to an argument results in forfeiture).

Mrs. Sharp maintains that she was subjected to an unreasonable seizure, because according to her, she was interrogated and detained on the front stoop of her home when Officer Zenaty arrived to conduct a welfare check.[3] A person is seized by the "laying of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Torres v. Madrid,* 141 S. Ct. 989, 995-96 (2021). The Court previously dismissed this claim because Mrs. Sharp's complaint was devoid of any allegations of a seizure, and there were also no allegations that Mrs. Sharp was required to speak with Officer Zenaty or prohibited from leaving. The second amended complaint similarly lacks any allegations of a seizure and Officer Zenaty moves to dismiss it for that reason. Officer Zenaty also asserts qualified immunity, alleging that a reasonable police officer would not know that responding to a welfare check, and asking questions directly related to the subject of the welfare check, was a clear violation of a constitutional right.

To overcome an assertion of qualified immunity, Mrs. Sharp must point to closely analogous cases that establish Officer Zenaty actions violated clearly established law. Mrs. Sharp relies on *Terry v. Ohio*, 392 U.S. 1 (1968), *U.S. v. Segoviano*, 30 F.4th 613 (7th Cir. 2022), and *Caniglia v. Strom*, 141 S. Ct. 1596

---

[3] There are no allegations that Christopher Sharp was present at any time during Mrs. Sharp's interaction with Officer Zenaty. Construing the pro se complaint liberally, the Court will interpret the complaint as only alleging a violation of Lindsay Sharp's Fourth Amendment rights.

(2021) to show that Officer Zenaty's actions violated clearly established law. But these cases are not remotely similar, much less are the cases "closely analogous" to the allegations presented here, so it cannot be said that the constitutional question raised by Mrs. Sharp is beyond debate. *Reed*, 906 F.3d at 547; *Mullenix*, 136 S. Ct. at 308. Unlike the facts in the cases cited by Mrs. Sharp, there are no allegations in the second amended complaint that Officer Zenaty physically touched or restrained Mrs. Sharp, entered her home, asked Mrs. Sharp to leave or forced her to exit her home, told her that she could not leave or prevented her from reentering her home, or handcuffed Mrs. Sharp.[4]  Because Mrs. Sharp has failed to show that Officer Zenaty violated clearly established law, he is entitled to qualified immunity on the unreasonable seizure claim.

## c. Due Process claim against the School Defendants

Plaintiffs contend that their rights under the Due Process Clause of the Fourteenth Amendment were violated by both defendants. Plaintiffs allege that the Defendants violated "their rights to liberty, and property, without due process of law"; that Defendants "violated Plaintiffs' right to privacy"; that Defendants violated Plaintiffs' "parental rights to raise their children in the manner they choose"; and, similarly, that Defendants violated Plaintiffs' rights "to make parental decisions concerning the case, custody, and control of their children." SAC, ¶¶ 4,5,7–

---

[4] In her response brief, Mrs. Sharp sets forth new factual allegations that that she was ordered to remain where she was and was seized by Officer Zenaty's show of force. Even a liberal reading of a pro se complaint does not allow a plaintiff to raise new allegations in a response brief. So, these new allegations will not be considered. *See Harrell v. U.S.*, 13 F.3d 232, 236 (7th Cir. 1993) ("The plaintiff cannot cure the deficiency by inserting the missing allegation in a document that is not either a complaint or an amendment to a complaint.").

9. The Court previously dismissed this claim because Plaintiffs failed to provide any explanation for the procedural or substantive due process claims, leaving the Defendants to speculate the basis of these allegations. Dkt. 41, at 12.

To state a procedural due process claim, a plaintiff must allege (1) the deprivation of a protected property or liberty interest and (2) that the deprivation was undertaken without sufficient process under the circumstances. *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018); *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). To allege a substantive due process claim, a plaintiff must allege that the defendants violated a fundamental right or liberty under color of state law and that their actions were "so arbitrary and irrational as to shock the conscience." *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021).

The School Defendants argue that Plaintiffs' third attempt to state a procedural or substantive due process claim fails because Plaintiffs still have not alleged sufficient facts that put the School Defendants on notice of the claims and render them plausible. School D. Reply, Dkt. 68, at 7-8. Plaintiffs appear to concede the deficiency of their procedural due process claim by abandoning the claim in their response brief. This concession is prudent as Plaintiffs did not plausibly allege that they were personally denied sufficient process or a deprivation of an interest, so Plaintiffs' procedural due process claim against the School Defendants is dismissed. *Tucker*, 907 F.3d at 491.

Plaintiffs' substantive due process claim against the School Defendants is based on their parental rights to raise children the way they choose. Plaintiffs allege their substantive due process rights were violated because RCS was required to participate in remote learning during the COVID-19 pandemic and this method of instruction interfered with their parent-child relationship. P's Response, Dkt. 67 at 6. The School Defendants argue this claim should be dismissed for two reasons: first, Plaintiffs' response brief conceded to giving their implied consent to RCS's participation in remote learning, and second, that the "use of remote instruction was reasonable and rationally related to a legitimate government interest of preserving human health and safety while maintain learning opportunities for students." Dkt. 68, at 6. Indeed, because Plaintiffs admitted they implicitly gave consent to remote instruction, their claim for interference with their parental rights is more speculative than probable.

Plaintiffs' substantive due process claim also fails because of the Supreme Court's ruling that there is no fundamental right to public school education. *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988); *see San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (rejecting the application of strict scrutiny to the right of public education). The question is therefore whether the School Defendant's remote learning during the 2020-21 school year was rationally related to a legitimate government objective. *Kadrmas*, 487 U.S. at 461-62. The Ninth and Tenth Circuits have addressed similar substantive due process claims against public school districts for instituting remote learning policies during the

COVID-19 pandemic and found that the remote learning policy promoted the legitimate and compelling interest of promoting the health and safety of students and staff during the COVID-19 pandemic. *Brach v. Newsom*, 7 F.4th 904, 924 (9th Cir. 2021); *see Hernandez v. Grisham*, No. 20-2176, 2022 U.S. App. LEXIS 31484 (10th Cir. Nov. 15, 2022) (affirming district court's award of summary judgment in favor of the school district). Recently, much has changed regarding the acceptable response to the COVID-19 virus, but using the information available in 2020, the School District's decision to require remote learning during the 2020-2021 school year was a rational and reasonable approach to promoting the health and safety of students and staff, and Plaintiffs have not stated a claim for a violation of their substantive due process rights.

Because Plaintiffs gave their consent to remote instruction and there is no fundamental constitutional right to public school education, they do not state a claim for a substantive due process violation. *Nelson*, 992 F.3d at 604; *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (instructing courts to "exercise the utmost care" when asked to "break new ground" in the field of substantive due process).

### d. Due Process claim against Officer Zenaty

Plaintiffs once again fail to explain the basis of their Due Process allegations against Officer Zenaty. Even if Plaintiffs articulated the bases of their allegation, Officer Zenaty would nevertheless be entitled to qualified immunity on this claim because the Plaintiffs fail to plausibly allege that Officer Zenaty deprived them of a

protected interest or violated their fundamental rights or liberties. *Reed*, 906 F.3d at 546 (if a plaintiff fails to show that the official violated a constitutional right, the defendant official is protected by qualified immunity).

### e. Equal Protection Clause

Plaintiffs assert that both the School Defendants and Officer Zenaty "denied Plaintiffs their equal protection of laws." Dkt. 47, ¶ 6. The Court previously dismissed these claims because Plaintiffs only cursorily alleged equal protection violations without factually developing the allegations and merely observed that the law prohibits an act, which is insufficient to state a plausible claim. Dkt 41, at 13.

As this claim pertains to the School Defendants, they argue that once again Plaintiffs fail to provide any factual support how their equal protection rights were denied, and this leaves the School Defendants to speculate how they are responsible for the denial of the Plaintiffs' equal protection rights. Dkt 49, at 8. Once more, Plaintiffs' response fails to address the School Defendants' arguments on the equal protection claim, therefore they have forfeited the claim. *Citizens for Appropriate Rural Rds.* 815 F.3d at 1078 (holding that a plaintiff's failure to respond to an argument results in forfeiture).

The Plaintiffs' equal protection claim against Officer Zenaty fares no better. To state a claim for an equal protection violation, the plaintiff must plausibly suggest that the challenged conduct had a discriminatory effect and was motivated by a discriminatory purpose. *Chaves v. Illinois State* Police, 251 F.3d 612, 635-36 (7th Cir. 2001). Plaintiffs argue that Mrs. Sharp was intentionally treated

differently from similarly-situated individuals because "[a]ny other welfare check in Lake in the Hills ends when Police have found that the person in question is okay" and "Zenaty treated Lindsay in a manner that is shocking to the conscience." Dkt. 67, at 8.[5]  Plaintiffs suggest that Officer Zenaty's conscience-shocking treatment was questioning Mrs. Sharp on her stoop about whether RCS had a gun or if a gun was in the family's home. *Id.* Officer Zenaty asserts qualified immunity, arguing that it is was not clearly established that questioning Mrs. Sharp about the subject matter of the welfare check he was called to carry out violated her constitutional rights. Zenaty Mot. to Dis., Dkt. 54 at 11-12.

To establish that a right was clearly established, Plaintiffs must point to a similar case that establishes that right under similar circumstances. *See Reed*, 906 F.3d at 547. Plaintiffs have not done so here. Because the Plaintiffs have failed to meet their burden of providing an analogous case that shows Officer Zenaty violated a clearly established law by questioning Mrs. Sharp on the stoop of her home, Officer Zenaty enjoys qualified immunity from Plaintiffs' equal protection claim. *Id.*

**f. Monell Claims**

Plaintiffs attempt to bring a *Monell* claim against the School Defendants under the theory that District 155 had a "policy to demand audio and video transmission." Dkt. 67, at 6. But a municipality cannot be liable under *Monell* when

---

[5] Plaintiffs raise a claim for retaliation; and violations of the Second, Fifth, and Sixth Amendments, for the first time in their response brief. Even a liberal reading of a pro se complaint does not allow a plaintiff to raise new claims in a response brief. So, the retaliation claim will not be considered. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("Although a plaintiff may assert additional facts in a motion to defeat dismissal, he or she cannot amend his or her complaint to state new claims in such a motion.").

there is no constitutional violation by a municipal employee. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Court has determined that Plaintiffs failed to plausibly allege any constitutional claim against any school employee, the Plaintiffs have failed to state a *Monell* claim against the School Defendants.

In their response brief, Plaintiffs also attempt to allege a *Monell* claim against the Village of Lake in the Hills. Dkt. 67, at 9. This claim is deficient for many reasons. First, the Village is not a named defendant in the second amended complaint and the Plaintiffs cannot amend their complaint in their response brief. See Dkt. 47, *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption…"); *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("Although a plaintiff may assert additional facts in a motion to defeat dismissal, he or she cannot amend his or her complaint to state new claims in such a motion."). Second, Plaintiffs do not allege that the Village itself violated their constitutional rights, instead they rely on a finding that Officer Zenaty violated their constitutional rights. But because Officer Zenaty did not violate the Plaintiffs' constitutional rights, there can be no *Monell* claim against the Village. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) ("[I]f the plaintiff's theory of *Monell* liability rests entirely on individual liability . . . negating individual liability will automatically preclude a finding of *Monell* liability."). Furthermore, Plaintiffs do not provide any factual support to state a plausible claim that there was a widespread practice or custom within the village to violate individual's constitutional rights which is necessary to hold a municipal

15

liable for the conduct of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) (a plaintiff may not simply rely upon his own experience to invoke *Monell* liability). Thus, the Court dismisses any *Monell* claim contained in Plaintiffs' second amended complaint.

### g. State Law Claim

The Plaintiffs also bring a state law claim under 720 ILCS 5/26-4(a-6), (a-20), alleging unauthorized video recording and live video transmission. Because the Court has dismissed all federal claims for failure to state a claim, the Court, using its discretion, declines to exercise supplement jurisdiction over the state law claim. *See* 28 U.S.C. § 1367(c)(3); *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019) ("The district court was well within its discretion in declining to exercise supplemental jurisdiction after it dismissed all claims over which it had original jurisdiction.").

## IV. Conclusion

For the foregoing reasons, the School Defendants and Officer Zenaty's motions to dismiss [49] and [53] are granted in their entirety. Because the Plaintiffs were given three opportunities to plead plausible claims and failed to do so, the dismissal is with prejudice. *See Bank of Am.*, *N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) ("The Bank insists that the district judge abused his discretion by dismissing the complaint with prejudice rather than allowing it to try again. But in court, as in baseball, three strikes and you're out."); *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (affirming dismissal with prejudice after the "plaintiffs had three opportunities to identify a relevant market in which the NCAA allegedly committed violations of the Sherman Act"). The Court declines to exercise supplemental jurisdiction over the remaining state law claim, and it is dismissed without prejudice to being refiled in state court. All claims are now resolved against all parties.

Date: March 30, 2023

Honorable Iain D. Johnston
United States District Judge

17